## EL PASO CITY LINES, Inc. v. STANLEY.
### No. 4544.

Court of Civil Appeals of Texas. El Paso.

Oct. 30, 1947.

Rehearing Denied Nov. 20, 1947.

Kemp, Smith, Brown, Goggin & White, of El Paso, for appellant.

Joseph L. Dunnigan and Eugene T. Edwards, both of El Paso, for appellee.

SUTTON, Justice.

The appellee, as plaintiff, sued the appellant to recover for personal injuries sustained by him at the intersection of Alameda Avenue and Hammett Boulevard on September 2, 1945, in a collision between himself and a street car operated by the defendant. The trial was in the 41st District Court of El Paso County to a jury on the facts and on a favorable verdict judgment was rendered in favor of plaintiff in the sum of $10,000. From that judgment the defendant has appealed.

Counsel in this case, and as well in another on the same date submitted, have favored and complimented us with an admirable and able presentation of the appeal. Only the worthwhile points have been brought forward, together with the pertinent statement of facts, and all baseless contentions are eliminated. Of this we gratefully take notice.

The defendant has two points of error briefed together and as we construe them they are to the effect that the evidence conclusively establishes plaintiff is guilty of contributory negligence as a matter of law. It prays the judgment be reversed and rendered, and suggests that if this can not be done the judgment should be affirmed. The evidence touching the way and manner of the happening of the accident only is brought up.

Plaintiff was an intending passenger for the car that struck and injured him. The accident occurred as the result of an effort on his part to reach the aboard side of the car from the opposite side of the street at a regular stop and safety zone at the inter-

section as will be made more fully to appear hereafter.

Based on the pleadings in response to special issues the jury found negligence on the part of the defendant as follows:

That the motorman as he approached the intersection slowed his car down and then speeded it up, which constituted negligence;

That the street car just prior to the accident and as it approached the intersection was operated at a negligent rate of speed;

That the motorman failed to keep a proper lookout; and that each of such acts of negligence was a proximate cause of the accident.

The jury further found the motorman was not negligent in failing to stop at the safety zone and intersection;

That he did not fail to sound a warning that he was not going to stop;

That plaintiff did not fail to keep a proper lookout;

That the gong of the street car just prior to the accident was not sounded in such a manner as to warn one in plaintiff's situation it would be unsafe to attempt to pass in front of the car;

That plaintiff was not guilty of negligence in not waiting for the car to pass before attempting to pass over, and

That the accident was not unavoidable.

The defendant relies altogether upon the cases of Texas & N. O. Ry. Co. v. Burden, Tex.Sup., 203 S.W.2d 522 and Gulf, C. & S. F. Ry. Co. v. Gaddis, Tex.Com.App., 208 S.W. 895.

■ We take it to be admitted that both primary and contributory negligence are primarily questions of fact to be determined by the jury and only in rare cases when the evidence is undisputed and only one reasonable conclusion or inference can be drawn therefrom the question becomes one of law. This is asserted in the Burden case and will be found in cases hereinafter cited.

Plaintiff, on the date of the accident, was a soldier stationed at nearby Biggs Field. He and two companions went to a rodeo at Washington City Park, a recreation park, in the vicinity of the scene of the accident.

Shortly after 10 p. m. he and his associates came out to Alameda Avenue to catch a street car back into the City. There were quite a number of people seeking to return in the same manner and some 25 or more were waiting at the regular car stop at the intersection of Alameda and Hammett. While waiting plaintiff went to a rest room in a filling station on the south side of Alameda, which was the left looking toward down town. The car involved in the accident approached. Plaintiff's two soldier friends called and waved to him to come on; the car was coming. There is testimony that plaintiff hurried and ran across the street to catch the car. In this effort he and the car collided. As a result of the collision plaintiff suffered severe and serious injuries to both body and head. The abbreviated statement of facts discloses he lost his left eye and indicates he has suffered serious and distressing mental injuries, but there is no question or point made on the injuries. Plaintiff has no recollection of what happened at the scene of the accident.

■ In the center of Alameda Avenue there is a narrow dirt strip or parkway protected by a concrete curb some six inches in height. The double-track car lines are situated on either side of the center and subject to vehicular traffic. People seeking passage on the street cars on the night of the accident, and other times as well, sought and seek to avoid the traffic by resorting to this center strip. For taking on and discharging passengers there is marked off on the pavement a "safety zone". It is undisputed and admitted by the motorman that he cut off his power and "held the air" as he approached the safety zone and intersection, slowing down his speed, as he put it "to get the people off the track." People were passing over from the center parkway strip across the track to the safety zone to catch the car. The motorman then, after slowing down, shut the air off and gave it five points or one-half the power and increased the speed of the car, carrying it some 244 feet past the point of collision and intersection and into the next block. As heretofore indicated the jury found this to be negligence as well as the speed at which the car was operated and the failure to keep

a proper lookout and that each was a proximate cause of the accident. It has been many times held not to be negligence per se to pass in front of a moving street car. San Antonio Traction Co. v. Levyson, 52 Tex. Civ.App. 122, 113 S.W. 569, error refused; El Paso Electric Co. v. Terrazas, Tex.Civ. App., 208 S.W. 387, error refused; Harting v. East St. Louis Ry. Co., Mo.Sup., 84 S.W. 2d 914; Hawkins v. Wells, Mo.App., 297 S. W. 193; Dominiczak v. Milwaukee Electric Ry. & Transport Co., 247 Wis. 640, 20 N.W. 2d 635; Moeller v. St. Paul City Ry. Co., 218 Minn. 353, 16 N.W.2d 289, 156 A.L.R. 371; Peyla v. Duluth M. & I. Ry. Co., 218 Minn. 196, 15 N.W.2d 518, 154 A.L.R. 505; Williams v. East St. Louis Ry. Co., Mo. App., 100 S.W.2d 51.

The cases relied upon by the defendant involve railroad crossing accidents, which we deem unnecessary here to distinguish. But in such cases, as may be noted from the cases relied upon, contributory negligence is rarely established as a matter of law. We have found no street car case and have been cited to none wherein contributory negligence has been established as a matter of law. The difference between railroad trains and street cars and the rights of each with respect to the rights of the public are discussed ably by the eminent Judge in the very fine opinion in the Levyson case supra, which may be read and need not here be repeated. In cases such as this the courts have not yet undertaken to contrive a generalization to aptly apply to every situation, but every such case must depend upon and be determined by its own particular facts. There is no arbitrary rule by which contributory negligence may be determined, and unless, after looking at all the evidence, it is apparent that but one reasonable conclusion can be drawn from it then contributory negligence is a question of fact, and when it is as reasonable to conclude one way as the other then it is also a question of fact. City of Ft. Worth v. Lee, 143 Tex. 551, 186 S.W.2d 954, loc.cit. 958, Secs. 7 and 10, 159 A.L.R. 125 and the cases there cited.

The jury might well have reasonably concluded, and probably did, that plaintiff believed, and had a right to so believe, when the motorman slowed down that he was going to make the stop and pick up the waiting passengers and construed the slackening of speed and the shutting off of the power an indication or invitation to proceed across the track. In such circumstances it was certainly a question for the jury to determine whether or not plaintiff was guilty of negligence.

The jury found the car was negligently operated at an excessive rate of speed and that the motorman failed to keep a proper lookout. The evidence discloses there were a large number of people in the street seeking passage to town on his car, and he testified himself they were on and crossing the tracks. As said by Judge Neill in the Levyson case supra, since street cars necessarily take on and discharge passengers in the streets over which the cars are run, it is the duty of the operator to especially exercise ordinary care to prevent injuring those who are on the street and crossing the track for the purpose of taking passage. The plaintiff certainly had a right upon the street and a right to pass over the track in front of the car, if in his judgment he could do so in safety, and he may not be convicted of contributory negligence because of an error in judgment. The jury might well have concluded from the facts in evidence plaintiff could have crossed over safely had the motorman operated his car at the intersection under the circumstances at a more moderate rate of speed, or had he kept a proper lookout for plaintiff.

Under all the facts and circumstances in this case we are of the opinion plaintiff's negligence, if any, was a question of fact for the jury and that it was properly submitted to them, and the judgment of the trial court is accordingly affirmed.